# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT STRONG,<br><br>       Plaintiff,<br><br> vs.<br><br>DIANA E. JOHNSON, TRUSTEE OF THE DIANA E. JOHNSON TRUST DATED JULY 25, 2013,<br><br>       Defendant.<br>_____<br>DOROTHY WHITE,<br><br>       Plaintiff,<br><br> vs.<br><br>DIANE E. JOHNSON, TRUSTEE OF THE DIANE E. JOHNSON TRUST DATED JULY 25, 2013,<br><br>       Defendant. | CASE NOS. 16cv1289-LAB (JMA) and 16cv2524-LAB (JMA)<br><br>**ORDER DISMISSING COMPLAINTS;**<br><br>**ORDER DENYING AS MOOT MOTIONS TO DISMISS; AND**<br><br>**ORDER REQUIRING PLAINTIFFS TO SEEK LEAVE TO AMEND** |

These consolidated disability discrimination cases concern the accessibility of the same facility, a local shopping center's parking lot. Because Defendant had renovated the parking lot and it appeared Plaintiffs' Americans with Disabilities Act (ADA) claims might be moot, depriving the Court of jurisdiction, the Court ordered the parties to file a status report.

In particular, Plaintiffs' counsel was required to have a specialist inspect the parking lot and make any measurements. The Court is presumed to lack jurisdiction, and the burden always falls on the party invoking it — in this case, Plaintiffs. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Gen. Atomic Co. v. United Nuclear Corp*., 655 F.2d 968, 968–69 (9th Cir.1981).

The parties have filed their status report in the form of a joint statement with individual sections. According to the report, all barriers identified in the operative complaints in each of the two consolidated cases have been remediated. But it appears Plaintiffs' designated specialist, Mr. Lockman, found new problems that Plaintiffs believe are keeping the controversy alive.

**Current Claims**

In *Strong*, case 16cv1289-LAB (JMA), the First Amended Complaint identifies the following barriers:

1. The disabled parking space lacks signage.

2. No space is designated as van accessible.

3. "The access aisle has slopes and/or cross slopes that exceed 1:48, which is the maximum slope allowed by the ADA, due mainly to an encroaching built-up curb ramp. Without a level access aisle, it is difficult for Strong to unload/transfer from a vehicle as his wheelchair rolls and/or a lift's platform cannot sit level."

In *White*, case number 16cv2524-LAB (JMA), the Complaint identifies the following barriers:

1. "Both of the disabled parking spaces have slopes and/or cross slopes that are too steep, one of which is due to an encroaching built-up curb ramp. Without a level parking space, it is difficult for White to unload/transfer from a vehicle as her wheelchair rolls and/or a lift's platform cannot sit level;" and,

2. "At least one of the access aisles has slopes and/or cross slopes that are too steep, due mainly to an encroaching built-up curb ramp. Without a level access aisle, it is difficult for White to unload/transfer from a vehicle as her wheelchair rolls and/or a lift's platform cannot sit level."

According to the parties' joint statement, barriers 1 and 2 identified in *Strong* have been corrected. Claims for injunctive relief arising out of those conditions are now moot.

Strong's third claim and both of White's claims concern slopes, and their portion of the status report also mentions excessive slopes. But on closer examination, it is clear the slopes are distinct and amount to different barriers.

Plaintiffs' current claims concern slopes so steep that they prevent the Plaintiffs from transferring from their vehicles to the parking lot, either because the slopes cause their wheelchairs to roll away, or because a mobility-equipped van's lift platform cannot sit flat when deployed.

The newly-identified excessive slopes, though, are different. Plaintiffs' section of the joint statement says that Mr. Lockman visited the parking lot and measured a cross slope of 2.8% at the "head" of the disabled parking space. (Docket no. 28 at 2:16–18.) He also found a "running slope" of 3% at the "International Symbol of Accessibility in the disabled parking space." (*Id*. at 2:17–20.) Neither of these allegedly excessive slopes affect Plaintiffs' ability to load, unload, or transfer from vehicles. Passengers do not load, unload, or transfer into or out of vehicles at the head of a parking space, and vehicular lifts do not deploy there. Neither complaint alleged that either Plaintiff had difficulty traversing the parking lot, and neither action raised that as the basis for a claim.

In *White*, in particular, the Court has had the benefit of additional information. In that case, the Court held a jurisdictional hearing, and directed Plaintiff's counsel to familiarize himself with her travel habits and practices. At the hearing, Plaintiff's counsel conceded she would only have difficulty when trying to load or unload from a parked vehicle. Although Though White often traveled by public bus, she had never gone to this facility that way and he could not say she would have difficulty traversing the parking lot if she did.[1] In other words, White's claim was based specifically on her ability to load and unload from a vehicle parked in the parking lot, not her ability to traverse the parking lot.

_____

[1] At the hearing, White's counsel conceded she had only been to the facility once, in September of 2016, and on that occasion she arrived by private car. She has not been back since and has no definite plans to return.

16cv1289/16CV2524

Plaintiffs' statement also mentions a new and different problem not alleged before. It says the "diagonal hatch marks in the adjacent access aisle were greater than 36 inches on center," (Docket no. 28 at 2:20–22), but it isn't clear whether Plaintiffs consider this a barrier under the ADA[2] or any other law. And even if this might be a barrier for someone, Plaintiffs have never said why it would be a barrier for them.

Accepting Plaintiffs' version of facts as true, it is clear that they do not need prospective injunctive relief to remedy any of the current ADA violations that form the basis for any of their pending federal claims. Plaintiffs' current ADA claims, in other words, have become moot. And because the ADA claims are moot, the Court has no basis for exercising jurisdiction over supplemental state law claims. *See Rodriguez v. Ralphs Grocery Co.*, 323 Fed. Appx. 617, at *1 (9th Cir. 2009) (citing *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805–07 (9th Cir. 2001)) ("[I]f the federal claim is dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain supplemental claims for adjudication, and must dismiss the state law claims without prejudice . . . .").

**Possibility of Amendment**

The new barriers Plaintiffs' specialist identified may form the basis for new claims, but only if Plaintiffs can successfully raise a federal claim, or otherwise invoke the Court's jurisdiction.

It is unclear whether either or both Plaintiffs can successfully amend. While excessive slope in the center of a parking space might technically be a violation of some kind, the fact that it is in the middle of the parking space means it would be underneath any vehicle parked there. This strongly suggests it would not be a barrier for either Plaintiff. With regard to the excess 0.8% slope at the head of the parking space, the statement does not say where at the head the slope was measured. It is therefore unclear whether the extra 0.8% is in the lane that either Plaintiff would travel to get to the sidewalk. In the same vein, an extra-wide access aisle might be a technical violation, but nothing in the pleadings suggests it created

---

[2] If the 36" on-center diagonal striping is not required under the ADA or other federal law, it cannot give rise to an ADA claim or other federal claim.

a problem for either Plaintiff. In other words, there is no showing the irregularities Mr. Lockman noted are anything other than technical violations that have no effect on Plaintiffs' use of the facilities. In particular, Plaintiff's counsel's representations regarding White's use of the facilities imply they have no effect on her.

Furthermore, Defendant's reply says that after Mr. Lockman pointed out the striping irregularities and the slope at the head of the parking space, their contractor fixed them. Plaintiffs are silent as to whether that is true, and apparently have not reinspected the parking lot after repairs were made. Defendants also represent that their contractor is ready to correct any problems, if Plaintiffs' specialist will look at the repaired parking space and point them out.

The burden is, as always, on Plaintiffs to establish jurisdiction. It appears they neglected to have their expert reinspect the parking space, and have not taken reasonable steps to confirm that there is still some basis for them to be bringing an ADA claim. Nor is it evident why injunctive relief is needed or available to remedy any of the barriers Plaintiffs' specialist identified.

At the same time, the Court cannot say whether the complaint can be saved by amendment. *See Kendall v. Visa U.S.A.*, Inc., 518 F.3d 1042, 1051 (9th Cir. 2008) (holding that leave to amend should ordinarily be granted, unless it is clear the complaint cannot be saved by amendment).

The First Amended Complaint in *Strong* and the Complaint in *White* are therefore **DISMISSED WITHOUT PREJUDICE** for failure to invoke the Court's jurisdiction. The pending motions to dismiss those pleadings (Docket no. 13 in case 16cv1289 and Docket no. 5 in 16cv2524) are **DENIED AS MOOT** and the Clerk shall terminate them.

**Order Requiring Plaintiffs to Amend**

If Plaintiffs wish to amend to add new viable ADA claims or other federal claims, they should first have their specialist inspect the parking lot again to confirm whether Defendant's representations that all barriers have been removed are correct. If they find barriers that they believe form the basis for an ADA claim, they should inform Defendant.

16cv1289/16CV2524

If Plaintiffs believe they can successfully amend to state a claim that the court can exercise jurisdiction over, they should each seek leave to amend by filing an *ex parte* motion, not longer than seven pages, attaching their proposed amended complaints as exhibits. Their motions must be filed no later than **Tuesday, September 12, 2017**. The proposed amended complaints should plead facts showing what the current barriers are and why they why they give rise to an ADA claim or other federal claim for each Plaintiff.

Plaintiffs' *ex parte* motions should be supported by declarations stating that Mr. Lockman or another specialist has inspected the facilities after Defendant's contractor made the latest round of repairs and that the new barriers Plaintiffs are now pointing out were not corrected.

If Plaintiffs seek leave to amend, Defendant will have **14 calendar** days to file an opposition, after which the matter will be deemed submitted on the papers. The Court may schedule a hearing if appropriate.

If Plaintiffs need more time to amend, they should file an *ex parte* motion showing good cause for the extension, well before the deadline. If Plaintiffs do not seek leave to amend within the time permitted, this action will be dismissed without prejudice but without leave to amend further.

**IT IS SO ORDERED**.

DATED: August 17, 2017

**HONORABLE LARRY ALAN BURNS**
United States District Judge

16cv1289/16CV2524